## HERBERT *v.* ODLIN.

Where property is purchased by a partnership, notice to one is notice to all the partners; yet, if one of two persons, about entering into partnership, purchase of the other an undivided interest in property owned by him, to be held by the two for the use of the firm, this principle as to notice does not apply.

Where one was tenant for years of a spring, under a lease not recorded, and another purchased one half the land in which the spring was, without notice of the incumbrance, and subsequently purchased the other half, with notice, they were held to be tenants in common of the spring while the term continued.

And the deed, upon a bill for that purpose, will be regarded as reformed, as to one half the property, by an exception of the tenant's right to half the spring.

IN EQUITY. In 1848 the plaintiff, Samuel Herbert, owned land in Concord, in which there were springs, and he then leased to the defendant, Woodbridge Odlin, the right to build a spring and use the water for twenty years, but the lease was not recorded. Odlin dug and fitted up, in a durable manner, a large spring, and laid pipes to convey the water to the main street, for the use of himself and his associates, and continued in undisturbed use of the water till September, 1856.

In 1853 Herbert conveyed the land to Briggs & Weston, in fee, without any reservation of Odlin's interest, but they were aware of his right, and did not interfere with it. From them the land passed to one Robinson, now deceased, insolvent, with full knowledge of Odlin's claim. He did not interfere with Odlin, but attempted to buy his right. In May, 1856, Robinson conveyed one undivided half of the land to N. White, one of the defendants, together with much other property of the same kind, with a view to their carrying on, as partners, the business of supplying the inhabitants of the city with water. In September, 1856, Robinson and White destroyed the Odlin spring, by digging another, which drew away the water.

---
Herbert *v.* Odlin.
---

Odlin sued Herbert for damages, from the loss of his spring, the suit was referred, and the referees awarded him $500 damages.

This bill is brought against Odlin, White and others, for the amendment of the deeds, so as to reserve Odlin's right; for an injunction against enforcing any judgment on the award; and for other relief.

The answer of White denied any notice of Odlin's spring, or of his interest. Much evidence was taken, which is referred to, so far as it is deemed material, in the opinion.

*J. Kittredge, A. H. Bellows,* and *Perley,* for the plaintiff.

*Minot & Mugridge,* for Briggs and others.

*Flint & Bryant,* for Flint and others.

*George & Foster,* for White and others.

BELL, C. J.* This case, which at one time seemed likely to cover much ground, is now reduced to a few points. We do not understand that, either in the evidence or the argument, it is much insisted upon that White had notice of Odlin's claim. Express notice is distinctly negatived. Implied notice may sometimes be shown by proof of the situation and construction of the property, as, in this case, of the situation and condition of the spring or reservoir built by Odlin, and of its obvious and manifest likelihood to attract the attention of a purchaser of the land. But no evidence of this kind is before us, and, upon the proof, the court cannot say that this spring presented any thing calculated to attract the eye or notice of a purchaser, making an examination with a view to purchase. We must, therefore, assume that White had no notice, as implied from the condition of the land itself.

* BELLOWS, J., did not sit.

It is claimed that, before and at the time of the purchase of one half of this spring by White, Robinson and White had agreed to become partners in the aqueducts, previously owned by Robinson, and in the springs and lands from which the water was drawn, and in the business of supplying water to the inhabitants of Concord; that the deed from Robinson to White was made to him for the purpose of vesting in him half the property, to be held and used by the firm in the partnership business, and to be held as the property of the partnership, and for the uses and purposes of the firm; that Robinson, the partner, was, at the time and long before, well aware of Odlin's right; and that his knowledge was, therefore, notice to his partner.

It is clear that notice to one partner, of any matter affecting their rights in the partnership property, purchased for the use of the firm, is notice to the other. Story Part. 160; Coll. Part. 290; Cary Part. 57. Here the purchase is made by one of the partners, of the other, at the time of entering into the firm, and while their rights, as buyer and seller, were adverse to each other, and not as in the case of purchasing of a stranger, where their united interest is opposed to his. In the case of a purchase made by a firm of one of its members, the ordinary principle must apply, that the whole firm must be taken to know whatever any of its members then knew; so that if, after a partnership formed and commenced, an arrangement had been made that one of the partners should purchase of the other a part of the real estate then in use, for the purposes of the firm, with a view to continue the business by its use, the grantees must be charged with notice of all the facts known to either. It would surely be a gross fraud to withhold such knowledge from a partner.

The evidence does not show at what time the agreement of Robinson and White, relative to the partnership, was

entered into. It would seem that some of the negotiations were entered into some days before the purchase, but whether they related to the purchase of half the springs only, or to that and a partnership, does not appear. The agreement as to entering into partnership might have been a part of the bargain as to the purchase, or it might have been subsequent. A partnership was not indispensable. The business might have been managed by them as joint owners. Upon the evidence the court cannot assume that the partnership existed either at the time of the agreement to purchase or at the time of the conveyance by Robinson. If it did not, the parties stood in the ordinary attitude of buyers and sellers, adversely interested, each standing on his own knowledge, and neither affected by the knowledge of the other.

But, it is contended, that if White is regarded as a *bonâ fide* purchaser, without notice of any claim of Odlin, this is true only of the half purchased by him in May, 1856. Of the other half he has only a mortgage, executed in October, 1857, and he admits he had notice of Odlin's spring, and of his claim and interest, in August or September, 1856.

By the purchase in May, White acquired the title to half the property, including Odlin's spring. Of the other half Odlin continued the owner, since Robinson purchased with notice of his claim. The result then was, that White and Odlin became tenants in common of this spring, so long as Odlin's term continued, and White and Robinson became tenants in common of the reversion.

One tenant in common, it is decided, cannot, by the use of his other property, disturb or destroy the use of the common property. *Odiorne* v. *Lyford*, 9 N. H. 502. This principle makes White and Robinson wrong-doers in the destruction of the Odlin spring, and liable to him for the damage done. They cannot justify their acts under Herbert's deed, because, as to the half of that spring, Her-

bert's deed gave no right which it would not have done if it contained an exception of Odlin's rights. So far as the half of the land is concerned, the defendant, White, has no right to object to a correction of Herbert's deed to Briggs and Weston, and the succeeding deeds of that interest; and, as it is not the practice to direct any erasure or interlineation of deeds which are decreed to be reformed, but the proper decree is made to bind the rights of the parties, and to prohibit the setting up of the incorrect deed by the parties to be bound by the decree, there is no difficulty growing out of the fact that the deed cannot be literally amended as to one half of the property. So far as White's interest is concerned, the deed should be reformed as to the half purchased by him in 1857, saving his rights as to the other half.

But it is objected that the deed to Briggs and Weston should not be changed, because it was not made in its present form by reason of any fraud or mistake, but by the deliberate intention and design of the parties. A deed will not be corrected merely because it proves to be wrong. It must be shown that it was designed and intended by the parties to be as it is now proposed to make it, and by some mistake it was drawn otherwise. The mistake must be shown. *Tilton* v. *Tilton*, 9 N. H. 392.

The evidence on this point is not strong, but we think it tends to show, as clearly appears in the case of Briggs and Weston's deed, that there was no intention upon the part of the grantors to interfere with the rights of Odlin and his associates as to this spring. The deed failed to express the intention of the parties in this respect.

It is urged that it would be unjust to Odlin to allow this amendment, because it may defeat his action against Herbert, and leave him to a doubtful remedy against an insolvent estate. This, perhaps, might be true, but that the court have the power so to modify the decree as to allow Odlin all he ought to have upon the facts appearing in this

case, which are materially different from any which could be shown in his case at law.

It is complained that the delay of Herbert in bringing this bill has been such as to forbid the relief he asks, but we think the case cannot be regarded as one of that character.

*Decree in favor of the plaintiff.*